UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS P. BUDNICK )<br>     Plaintiff, )<br>)<br>v. )<br>)<br>HAMPDEN HOUSE OF CORRECTION )<br>     et al., )<br>     Respondents. )<br>) | Civil Action No. 04-30092-KPN |

**MEMORANDUM OF LAW IN SUPPORT OF
MASSACHUSETTS PAROLE BOARD'S MOTION TO DISMISS**

The *pro se* plaintiff, Thomas Budnick, alleges four causes of action in this lawsuit seeking over $10 billion in damages from various Massachusetts state agencies. Among the eight named defendants is the Massachusetts Parole Board ("Board"). The complaint describes the following causes of action: 1) "damage to America's Manifest Destiny"; 2) violation of civil rights; 3) "bribery"; and 4) medical malpractice. It is well established that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Nevertheless, as will be discussed in this memorandum, each claim against the Board must be dismissed.

As an initial matter, this Court lacks subject matter jurisdiction over any of these claims. The complaint alleges no personal conduct by any member of the Board to state a claim against a member individually, and all claims for damages against the Board, a state agency, are barred by the principles of sovereign immunity embodied in the Eleventh Amendment. This fatal defect in

2

the plaintiff's complaint, in conjunction with the frivolous nature of the underlying claims, require its dismissal as to defendant Massachusetts Parole Board, pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

## THE ALLEGATIONS

The complaint, and the accompanying newspaper article [("Article")] which the plaintiff incorporates by reference, alleges that for the past twenty-five years, the plaintiff, a resident of Ludlow, Massachusetts, has been filing claims "to land and mineral rights on Mars and elsewhere in outer space [in] the Sabine County [Texas] Clerk's Office." *See* Article at p. 1. These "filings claim specific portions, spelled out in longitude and latitude, of Mars, Jupiter and its moons, Galaxies NGC5194 and NGC5195 and the asteroid Nereus." *Id.* The plaintiff files his claims in Sabine County, Texas because it is the only office that will accept them.[1] *See id.* at p. 2. The plaintiff has never been to Texas. *See id.* at p. 3.

Since August 2, 2001, the plaintiff has been incarcerated in the Hampden County House of Correction in Ludlow, Massachusetts. Complaint at ¶ 3.[2] The complaint alleges that he has unsuccessfully sought to be released from the jail in order to "pick-up his Martian charts, Martian location patterns, Martian diagrams, [and] Martian sky-chart." *Id.* at ¶¶ 12-13. It also alleges that two corrections officers have repeatedly accused him of stealing scotch tape, have "advised [his] mother of this," and have used these accusations as an "excuse to keep [him] out of

---

[1] In a 1993 unreported decision, the First Circuit found that the Sabine County clerk's office accepted these filings because "the county needed the money from the filing fees." *Budnick v. Barnstable County Bar Advocates, Inc.*, 989 F.2d 484, 1993 WL 93133 *1 n. 1 (1st Cir. 1993).

[2] The plaintiff failed to individually number his paragraphs. *See* Fed. R. Civ. P. 10(b). The Board has done so for him and has attached a numbered copy for the Court's convenience.

3

business occupations and stuck in welding shop." *Id.* at ¶¶ 20-21.  The complaint further alleges that an unspecified member of the Board "took a bribe" and denied the plaintiff parole. *Id.* at ¶¶ 33-34.

Finally, the complaint alleges that the plaintiff "was in great agony" when he was initially incarcerated due to his "Martian meteorite burns" and that the failure of medical staff to act immediately resulted in the amputation of his second, right forefinger. *Id.* at ¶¶ 36-37. It also alleges that the plaintiff was "in agony for three years with a badly ingrown toenail" and that medical personnel "just ordered soaking in hot water, four to five times a day." *Id.* at ¶ 38.

## THEORIES OF LIABILITY

While at times lacking clarity, the complaint, construed in a liberal fashion, *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976), alleges four theories of liability.  In Count I, the plaintiff sues for "Damage to America's Manifest Destiny."[3]  Count II alleges a civil rights violation pursuant to 42 U.S.C. § 1983 and its state counterpart, the Massachusetts Civil Rights Act. *See* Mass. G. L. c. 12, §§ 11H and 11I.[4]  Here, the plaintiff complains that after being accused of stealing scotch tape and after going through a process that he acknowledges satisfied "all the requirements for a State of Massachusetts Trial," and being found not guilty, two corrections officers continue to accuse him of stealing and have improperly kept him in the welding program. Complaint at ¶ 18.

Count III alleges that an unnamed person bribed an unnamed Board member resulting in

---

[3] Underlying this claim appears to be a request for a furlough so that he might go home to obtain his maps and charts of Mars.

[4] In his complaint, the plaintiff erroneously cites this Act as falling under chapters 231 and 266 of the Massachusetts General Laws.

4

the subsequent denial of the plaintiff's parole. Complaint at ¶ 33. He includes no factual support for this claim, which, at its core, appears to be a claim that the Board wrongly denied him parole. Finally, Count IV alleges medical malpractice by staff at the Hampden County House of Correction and by staff at Bay State Medical Center. Complaint at ¶¶ 36-42. The Board addresses each claim seriatim.

## ARGUMENT

**EACH OF THE PLAINTIFF'S CLAIMS MUST BE DISMISSED FOR LACK OF JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

    A.    <u>This Court Lacks Jurisdiction to Hear Count I And, In Any Event, It Fails to State a Cognizable Claim</u>

In Count I, the plaintiff alleges "damage to America's Manifest Destiny" because he is prohibited from leaving the house of correction to "pick-up his Martian charts, Martian location patterns, Martian diagrams, [and] Martian sky-charts." Complaint at ¶¶ 11-12. The plaintiff claims that his lack of access to these materials is preventing him from "claim[ing] vast property in outer space 1/2 reserved for the . . . the good and fair people of the United States and Texas." Complaint at ¶ 11.

This Court lacks jurisdiction to adjudicate this claim. "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "This jurisdictional bar applies regardless of the nature of the relief sought." *Id.*; *see O'Neil v. Baker*, 210 F.3d 41, 47 (1st Cir. 2000); *Fresenius Medical v. Puerto Rico Cardiovascular*, 322 F.3d 56, 63 (1st Cir), *cert. denied*, 124 S. Ct. 296 (2003). The

5

Massachusetts Parole Board is a State agency and has not consented to this suit. Thus, the principles of sovereign immunity bar this Court from adjudicating this claim.

In addition, Count I does not present a federal question because it does not arise "under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331. To the extent the claim can be broadly construed to express a claim of an improper denial of a furlough,[5] it raises a claim under State law. *See* Mass. G. L. c. 127, § 90A (governing the temporary release of committed state inmates); *Devlin v. Comm'r of Correction*, 364 Mass. 435, 436-437, 305 N.E.2d 847, 849-850 (1973).

Nor does this Court have diversity jurisdiction over this case. *See* 28 U.S.C. § 1332. Although the plaintiff attempts to invoke diversity jurisdiction by claiming that he is a citizen of Texas, the facts he alleges in his complaint belie this claim. For example, the plaintiff acknowledges that his "home is a short two (2) minutes away" from the Hampden County House of Correction.[6] In addition, the newspaper article that the plaintiff incorporates by reference reveals that he "has never been to Texas." *See* Article at p. 3. The plaintiff's affinity for the State of Texas does not render him a citizen for purposes of establishing diversity jurisdiction. *See Garcia Perez v. Santaella*, 364 F.3d 348, 350 (1st Cir. 2004) (citizenship is determined by

---

[5] Even this most generous reading of the complaint is questionable because the plaintiff expresses a willingness to have corrections officers retrieve his Martian materials for him. Complaint at ¶ 12.

[6] The plaintiff offers no support for his claim that the Secretary of State for Texas granted him residency. This Court is "not bound . . . to credit 'bald assertions, unsupportable conclusions, and opprobrious epithets.'" *In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003) (quoting *Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987)). The Hampden County House of Correction is located in Ludlow, Massachusetts. In a motion to dismiss pursuant to Rule 12(b)(6), a court may consider, in addition to the pleadings, matters susceptible to judicial notice. *In re Colonial Mortgage Bankers Corp.*, 324 F.3d at 15-16.

6

domicile which can be established by demonstrating that the individual is physically present in the state and has an intent to remain indefinitely).

In any event, the Court must also dismiss the claim because it is not cognizable. The term "Manifest Destiny" was coined in 1839, when John L. O'Sullivan, a New York attorney, published his essay, *Manifest Destiny*.  *See* Anders Stephanson, *Manifest Destiny: American Expansionism and the Empire of Right* (1995) 38.  The doctrine "meant expansionism, prearranged by Heaven, over an area not clearly defined.  In some minds it meant expansion over the region to the Pacific; in others, over the North American continent; in others, over the hemisphere."  Frederick Merk, *Manifest Destiny and Mission in American History* (2d ed. 1966) 24.  "Its dominant feature was federalism which left control of local affairs - such as slavery - to the States, and entrusted to the central government control over any such extra-local functions on foreign affairs, interstate and foreign commerce, coinage, and taxation for federal purposes." *Id.* at 26.  In short, "Manifest Destiny" is a nineteenth century political doctrine.  The plaintiff's assertions notwithstanding, it is not an actionable legal claim and must be dismissed. *See* Fed. R. Civ. P. 12(b)(6).

Even if this Court were to rule that damage to the Nation's "Manifest Destiny" is an actionable claim, it must nevertheless dismiss the claim because the facts as alleged in the complaint do not support it.  In 1967, the United States signed the United Nations's "Treaty on Principles Governing the Activities of States in the Exploration and Use of Outer Space, including the Moon and Other Celestial Bodies."  Article II of this treaty declares: "Outer space, including the moon and other celestial bodies, is not subject to national appropriation by claims of sovereignty, by means of use or occupation, or by any other means."  Since the United States

7

signed the treaty, it has become the supreme law of the land. *See* U.S. Const. art. VI, cl. 2.[7] Consequently, all of the plaintiff's claims to portions of Mars and Jupiter, as well as any other celestial bodies, are void and, more to the point, his claim that the respondents have interfered with his right to pursue these claims is as well.

Finally, it is worth noting that if damage to America's "Manifest Destiny" were an actionable claim, the United States, and not the plaintiff, would be the appropriate party in interest. *See* 28 U.S.C. § 516 ("Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested . . . is reserved to officers of the Department of Justice, under the direction of the Attorney General."). Assuming all of the facts pleaded by the plaintiff are true, he has nevertheless failed to raise a cognizable claim. The complaint must be dismissed. *See* Fed. R. Civ. P. 12(b)(6).

    B.    <u>The Court Lacks Jurisdiction to Hear Count II, and In Any Event, It Fails to State a Cognizable Claim</u>

In Count II, the plaintiff alleges a civil rights violation pursuant to 42 U.S.C. § 1983 and its state counterpart, the Massachusetts Civil Rights Act. *See* Mass. G. L. c. 12, §§ 11H, 11I.[8] Here, the plaintiff complains that after being accused of stealing scotch tape and after going through a process that he acknowledges satisfied "all the requirements for a State of

---

[7] The "Supremacy Clause" provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

[8] Although the plaintiff alleges a violation of the Massachusetts Civil Rights Act, he fails to develop this claim in any meaningful way. *See* Fed. R. Civ. P. 8(a). In any event, this Court lacks jurisdiction to hear State law claims. *See Street v. Fair*, 918 F.2d 269, 271 (1st Cir. 1990); *Pennhurst State School & Hosp.*, 465 U.S. at 100.

Massachusetts Trial," and being found not guilty, two corrections officers continue to accuse him of stealing and have used these accusations to keep him in the welding training program.

The Court lacks jurisdiction to hear this claim against the Board. This is so because "neither a State nor its officials acting in their official capacities are 'persons' under 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). A suit against the Board is, according to *Will*, "no different from a suit against the State itself" and therefore no more permissible under 42 U.S.C. § 1983 than a suit against the State itself would be. *Id.* Further, to the extent the plaintiff intends to sue individual Board members, such a claim is categorically barred because "parole board members are entitled to absolute immunity from liability for damages in a § 1983 action for actions taken within the proper scope of their official duties." *Johnson v. R.I. Parole Board Members*, 815 F.2d 5, 8 (1st Cir. 1987); *see Namey v. Reilly*, 926 F. Supp. 5, 8 (D. Mass. 1996).

Finally, even if this Court were to overlook the jurisdictional bars to this claim, it should be dismissed because it does not state a claim. To state a cause of action under 42 U.S.C. § 1983, the plaintiff must show both that the Board acted under color of state law, and deprived him of a right secured by the Constitution or federal law. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Martinez v. Colon*, 54 F.3d 980, 984 (1st Cir.), *cert. denied*, 516 U.S. 987 (1995). In his complaint, the plaintiff acknowledges the defendants afforded him "all the requirements for a state of Massachusetts trial" and even found him not guilty of the offense. Complaint at ¶¶ 18-19. Consequently, the plaintiff cannot, by his own admission, prove that he was deprived of any right whatsoever. To the extent the plaintiff is using this claim as a vehicle to arrange his transfer to a different prison work-program, *see* Complaint at ¶ 23, such a claim is solely a matter of state

9

law, and the governing Massachusetts statute does not entitle inmates to attend any particular educational program. *See* Mass. G. L. c. 127, § 48; *cf. Association for Reduction of Violence v. Hall*, 558 F. Supp. 661, 663-664 (D. Mass. 1983), *rev'd on other grounds*, 734 F.2d 63 (1st Cir. 1984). The Court should dismiss this claim as well pursuant to Fed. R. Civ. P. 12(b)(6).

      C.      <u>The Court Lacks Jurisdiction to Hear Count III, and In Any Event, It Fails to State a Cognizable Claim</u>

In Count III, the plaintiff alleges that an unnamed person engaged in bribery resulting in the denial of the plaintiff's parole.[9] Complaint at ¶ 33. The plaintiff does not identify the Board member who allegedly accepted the bribe or who gave him the bribe, let alone what motivation this unnamed person would have to bribe the Board member. In short, this claim lacks any indicia of reliability whatsoever and is far more likely to be an after-the-fact invention of the plaintiff who is upset by the outcome of his parole hearing. In any event, even if this Court accepts a complaint on so flimsy a showing, it lacks jurisdiction to hear the claim. This is so because bribery of and by State officials is a State criminal offense, *compare* Mass. G. L. c. 268A, § 2 *with* 18 U.S.C. §§ 201, 203.

Assuming the complaint is one alleging that the Board improperly denied him parole, this Court lacks jurisdiction to hear that claim as well. Whether the Board acted properly in denying an inmate parole does not present a federal question. *See* 28 U.S.C. § 1331. Rather, it presents a state law question. *See* Mass. G. L. c. 127, § 130A. Nor could the plaintiff recast this as a Fourteenth Amendment claim. This is so because the Massachusetts parole state, Mass. G. L. c. 127, § 130A does not create a liberty interest in being paroled. *See Lynch v. Hubbard*, 47 F.

---

      [9] The plaintiff does not appear to be suing any individual member of the Board, but rather, the Board itself.

10

Supp. 2d 125, 127 (D. Mass. 1999), *aff'd* 248 F.3d 1127 (1st Cir. 2000). Finally, as argued above, diversity jurisdiction is not present because the plaintiff is a Massachusetts resident and, in any event, the Eleventh Amendment bars him from haling the Commonwealth into federal court. *See Pennhurst State School & Hosp.*, 465 U.S. at 100.

        D.      <u>This Court Should Dismiss Count IV Against the Parole Board</u>

The plaintiff's final cause of action is one for medical malpractice. This claim does not appear to be directed at the Board, but rather at the seven other defendants. To the extent the plaintiff does intend to direct this claim against the Board, it must be dismissed under the principles of sovereign immunity, *see id.*, and for failing to raise a federal question. *See* 28 U.S.C. § 1331. At best, the plaintiff's complaint alleges that medical personnel were negligent. *See* Complaint at ¶¶ 37-40. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see* Fed. R. Civ. P. 12(b)(1).

In any event, even if Count IV does raise a federal question, it must be dismissed as to the Parole Board because that agency has no responsibility for inmate medical care. *See* Mass. G. L. c. 127, §§ 16, 17; 103 D.O.C. § 601 (responsibility for inmate medical care rests with the State Department of Correction's Division of Health Services). Thus, even assuming all of the facts as alleged in the complaint are true, it must nevertheless be dismissed because it fails to state a cognizable claim against the Board. *See* Fed. R. Civ. P. 12(b)(6).

11

## CONCLUSION

Because the Massachusetts Parole Board is absolutely immune from this suit, and because, even if it were not immune, the underlying claims fail to state a claim upon which relief can be granted, the defendant requests that the Court enter a judgment dismissing its from this action pursuant to Rules 12(b)(1) and (6).

Respectfully submitted,

THOMAS F. REILLY
ATTORNEY GENERAL

/s/ Daniel I. Smulow
Daniel I. Smulow
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200, ext, 2949

Dated: August 12, 2004                ATTORNEYS FOR DEFENDANT
                                      MASSACHUSETTS PAROLE BOARD

## Certificate of Service

I hereby certify that a true copy of the above document was served on the plaintiff :

Thomas P. Budnick, *pro se*
B-4 #34 12328
Hampden County House of Correction
629 Randall Road
Ludlow, MA 01056-1085;

and on:

Katherine J. Day, Esq.
Egan, Flanagan & Cohen, P.C.
67 Market Street
P.O. Box 9035
Springfield, MA 01102-9035; and

12

| | |
|---|---|
| Edward J. McDonough, Jr., Esq.<br>Egan, Flanagan & Cohen, P.C.<br>67 Market Street<br>P.O. Box 9035<br>Springfield, MA 01102-9035 | ATTORNEYS FOR:<br>Hampden County House of Correction;<br>Michael J. Ashe, Jr.;<br>James L. Gill;<br>William Toller; |

and on:

| | |
|---|---|
| Kevin C. Giordano, Esq.<br>Keyes & Donnellan<br>293 Bridge Street, Suite 600<br>Springfield, MA 01103 | ATTORNEY FOR:<br>Kristin Stueber, |

and on:

| | |
|---|---|
| General Counsel<br>Baystate Medical Center<br>759 Chestnut Street<br>Springfield, MA 01199 | ATTORNEY FOR:<br>Baystate Medical Center, |

on August 12, 2004. I further certify that I was unable to serve a copy of these documents on Dr. Ralph Jones because I am unable to determine whether he is represented or identify any address for him.

/s/ Daniel I. Smulow