UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS P. BUDNICK,<br>           Plaintiff<br><br>           v.<br><br>HAMPDEN COUNTY HOUSE OF CORRECTION; SHERIFF MICHAEL J. ASHE, individually and in the scope of his authority; VOCATIONAL MANAGER JAMES L. GILL, individually and in the scope of his authority; ASSISTANT SUPERINTENDENT WILLIAM TOLLER, individually and in the scope of his employment; DEPARTMENT OF CORRECTIONS; MASSACHUSETTS PAROLE BOARD (members unknown); BAYSTATE MEDICAL CENTER; KRISTEN STUEBER, individually and in the scope of her employment; and RALPH JONES, individually and in the scope of his employment,<br>           Defendants | ) ) ) ) ) Civil Action No. 04-30092-MAP ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

<u>REPORT AND RECOMMENDATION WITH REGARD TO MOTIONS TO DISMISS FILED BY THE HCHC DEFENDANTS, THE MASSACHUSETTS PAROLE BOARD, AND THE DEPARTMENT OF CORRECTIONS (Document Nos. 5, 11 AND 13) and KRISTEN STUEBER, M.D.'S MOTION TO COMPEL THE CONVENING OF A MEDICAL MALPRACTICE TRIBUNE (Document No. 8)</u>
October 8, 2004

NEIMAN, U.S.M.J.

      In this action, the Hampden County House of Correction ("HCHC"), Sheriff Michael Ashe, and two HCHC administrators, James Gill and William Toller (together, "the HCHC Defendants"), have moved to dismiss pro se prisoner Thomas Budnick ("Plaintiff")'s complaint pursuant to Fed. R. Civ. P. 12 (b)(6), 28 U.S.C. § 1915A and 42

U.S.C. § 1997e. One of the remaining defendants, the Department of Corrections ("DOC"), has joined the above motion and another, the Massachusetts Parole Board ("Parole Board"), has filed a separate motion to dismiss. Still another defendant, Kristen Stueber, M.D. ("Dr. Stueber"), has moved to compel the convening of a medical malpractice tribunal in accordance with the provisions of Mass. Gen. L. ch. 231, § 60B with respect to the single medical negligence claim targeting her and two other healthcare providers, Baystate Medical Center ("Baystate") and Dr. Ralph Jones ("Dr. Jones").[1]

The motions have all been referred to this court for a report and recommendation. See 28 U.S.C. § 636(b)(1)(B). For the following reasons, the court will recommend that the motions to dismiss each be allowed and that the court decline to exercise supplemental jurisdiction over the remaining medical negligence claim. As a result, the court will further recommend that Dr. Stueber's motion to compel a medical malpractice tribunal be denied as moot.

## I. BACKGROUND

Plaintiff has been incarcerated at HCHC since August 2001. His eighteen-page, hand-written complaint purports to set forth various claims that have allegedly arisen during his imprisonment. Count I alleges "Damage to America's manifest destiny," Count II alleges a civil rights violation, Count III alleges bribery, and Count IV alleges medical negligence. Counts I through III target all defendants, whereas Count IV, while also naming all defendants, appears in substance to be directed only at the healthcare

---

[1] Neither Baystate nor Dr. Jones has appeared in this action.

2

providers, i.e., Dr. Stueber, Dr. Jones and Baystate.

## II. COUNTS I - III

The HCHC Defendants -- joined by the DOC and accompanied by the Parole Board's parallel motion -- have moved to dismiss the claims raised in Counts I through III on three different grounds. First, pursuant to Rule 12(b)(6), they assert that the complaint fails to state a claim upon which relief may be granted. Second, they seek dismissal based on 42 U.S.C. § 1997e(c) because of the frivolous nature of Plaintiff's claims. Section 1997(e)(c) provides as follows:

> [t]he court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

Third, they seek dismissal pursuant to 28 U.S.C. § 1915A, which sets forth the following procedure for reviewing civil rights claims brought by prisoners:

> (a) The court shall review, before docketing, if feasible or, in any event as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.

In the court's view, Counts I through III not only fail to state claims upon which relief may be granted, but they are frivolous as well.

3

In Count I, entitled "Damage to America's manifest destiny," Plaintiff alleges that during his incarceration at HCHC he has been unable to continue sending claims to Texas for Martian land and minerals.[2] Plaintiff attributes this failure to the defendants' refusal to escort him to his home to get his "Martian charts" or to retrieve these charts for him. In the court's opinion, this claim may be dismissed -- with respect to *all* defendants -- pursuant to any of the bases described above. Even construing facts most favorably to Plaintiff, no cause of action exists for "Damage to America's manifest destiny." The frivolity of this claim is self evident.

The court will also recommend that Count II, alleging a civil rights violation pursuant to both 42 U.S.C. § 1983 and its state counterpart, be dismissed as to all defendants, again in light of its trifling nature. Plaintiff alleges in Count II that he was accused of stealing three pieces of tape but found "not guilty" at a jailhouse "trial." According to Plaintiff, jail officials have continued to use the theft charge as justification for keeping him in a welding program and not allowing him to rotate to another educational program, namely, a computer class. As the Parole Board points out, however, state inmates are not entitled "to any particular educational program" or to choose which program they would like to attend. *Association for Reduction of Violence v. Hall*, 558 F. Supp. 661, 663-64 (D. Mass. 1983) (construing Mass. Gen. L. ch. 127, § 48), *vacated on other grounds*, 734 F.2d 63 (1st Cir. 1984). This court agrees. And

---

[2] It appears that for the past two decades Plaintiff has been sending official claims to land and mineral rights on Mars, as well as other extraterrestrial locations, to the Sabine County Clerk's Office in Texas. As described more fully in a newspaper article attached to Plaintiff's complaint, he views his claims as an effort to "continue America's manifest destiny, which is now space exploration." (See Complaint Exhibit, Houston Chronicle, *This land is your land, this space is his space*, (Dec. 10, 1999).)

since Plaintiff has not been deprived of a federal right, his civil rights claim should be dismissed as to all defendants. *See Martinez v. Colon*, 54 F.3d 980, 984 (1st Cir. 1995) (describing one "essential element" of a section 1983 claim as conduct by a state actor that "worked a denial of rights secured by the Constitution or laws of the United States") (citations omitted).[3]

Similarly, the court will recommend that the motion to dismiss be allowed with respect to Count III, which alleges bribery. According to Plaintiff, the Massachusetts Parole Board was bribed not to release him on parole, despite his good behavior. Plaintiff, however, does not know the identity of any members of the board. Moreover, he has only the vaguest of evidence to support this allegation; Plaintiff claims that one parole officer acted "drugged" at a hearing and, therefore, that bribery can be the only explanation for the denial of his parole. Perhaps the most fundamental problem with Plaintiff's bribery claim, however, is that, as a private citizen, he has not demonstrated how he has standing to enforce this alleged violation of the criminal code. *See Miller v. Mallery*, 410 F. Supp. 1283, 1287 (D. Or. 1976). *See also Doe v. Pocomoke City*, 745 F. Supp. 1137, 1139 (D. Md. 1990) (noting that the interest in criminal prosecution belongs to the community at large); *Feeley v. United States*, 16 F.3d 401, 1993 WL 557109, at *1 (1st Cir. 1993) (unpublished) (upholding dismissal of pro se complaint

---

[3] Count II has other potential deficiencies. For example, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); the members of the Parole Board are "entitled to absolute immunity from liability for damages taken in a § 1983 action for actions taken within the proper scope of their official duties," *Johnson v. R.I. Parole Bd. Members*, 815 F.2d 5, 8 (1st Cir. 1987); and the healthcare providers do not appear to be "state actors" under section 1983, *see Martinez*, 54 F.3d at 984.

and noting that the plaintiff "has no constitutional right to have certain prosecutions undertaken at his behest") (citing *Sattler v. Johnson*, 857 F.2d 224, 227 (4th Cir. 1988)). Accordingly, the court believes that Count III should be dismissed, again as to all defendants.

### III. COUNT IV

Should the court's recommendation with respect to Counts I through III be adopted, the only remaining claim would be Count IV in which Plaintiff alleges that the healthcare providers engaged in "medical negligence." Plaintiff alleges that medical treatment for an infection to his finger was negligently delayed from August until December of 2001, at which point it became necessary to amputate. Plaintiff also asserts that proper treatment of an ingrown toenail was negligently delayed for three years.

Without judging the merits of Count IV, the court recommends that supplemental jurisdiction over this claim be declined. *See* 28 U.S.C. § 1367(c)(3). Standing alone, Count IV neither explicitly, nor implicitly, raises a federal question such as one under the Eighth Amendment's cruel and unusual punishment clause. *See Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993) ("[T]he courts have consistently refused . . . to conclude that simple medical malpractice rises to the level of cruel and unusual punishment.") (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Further, because Plaintiff concedes to being a "resident" of HCHC in Massachusetts where he has lived for at least the last three years (Complaint at 3), this court's jurisdiction cannot be based on diversity of citizenship. *See* 28 U.S.C. § 1332. *See also Parker v. Dist. of Columbia*, 1993 WL 381710, at *2 (D.D.C. Sep. 9, 1993) (concluding, for diversity

jurisdiction purposes, that inmates are deemed to reside in the forum where the prison is located).[4]

## IV. CONCLUSION

For the foregoing reasons, the court recommends that the motions to dismiss (Document Nos. 5, 11 and 13) be ALLOWED as to all Defendants and that the case be closed. The court further recommends that Dr. Stueber's motion to compel the conveying of a medical malpractice tribune (Document No. 8) be DENIED AS MOOT.[5]

---

[4] Plaintiff's allegation that diversity jurisdiction is established "by the hard fact that the Texas Secretary of State awarded [him] Texas residency over twenty (20) years ago because of his American space claims" (Complaint at 3) is yet another frivolous, if not patently disingenuous, remark. For well over a decade, Plaintiff has filed many actions in this court from his Harding Road home in Ludlow, Massachusetts. See, e.g., *Budnick v. Arrow Security Co.*, C.A. No. 00-30133-KPN; *Budnick v. Creamer*, C.A. No. 96-30169-MAP; *Budnick v. Ajay Investigation*, C.A. No. 95-30190-MAP; *Budnick v. Baybanks, Inc.*, C.A. No. 95-30045-MAP; *Budnick v. Barnstable County*, C.A. No. 92-10957-EFH; *Budnick v. Service Employees Int'l Union, Local 509*, C.A. No. 91-11417-WJS. Indeed, even the Texas newspaper article Plaintiff attaches to his complaint (see n.2, *infra*) recognizes that he is "from Ludlow."

[5] The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. See *Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). See also *Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

DATED: October 8, 2004

                                                /s/ Kenneth P. Neiman
                                                KENNETH P. NEIMAN
                                                U.S. Magistrate Judge